# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

COVINGTON SPECIALTY
INSURANCE COMPANY,

      Plaintiff,

         v.                                  Civil Action No. 2:21-cv-247

OMEGA RESTAURANT &
BAR, LLC,

      Defendant.

## MEMORANDUM OPINION

Defendant Omega Restaurant & Bar, LLC ("Omega" or "Defendant") is a restaurant and bar located in Virginia Beach, Virginia. In September 2020, Omega was sued in Virginia state court by a group of models who alleged that Omega had misappropriated their images on Omega's website and social media accounts to promote its business (the "Underlying Lawsuit"). In the present lawsuit, Omega's insurer, Plaintiff Covington Specialty Insurance Company ("Covington" or "Plaintiff"), seeks a declaration that its policy does not provide Omega with insurance coverage and that it has no duty to defend or indemnify Omega in the Underlying Lawsuit. Pending before the Court are the parties' cross-motions for summary judgment. ECF Nos. 11, 14.[1] For the reasons stated below, the Court finds there is no coverage for the Underlying Lawsuit under the plain terms

---

[1]     Omega filed separate memoranda in support of its motion and opposing Covington's motion. Br. Opp. Mot. Summ. J., ECF No. 13; Br. Supp. Mot. Summ. J., ECF No. 15 ("Omega Mem. in Supp."). The "Argument and Authorities" sections of Omega's opposition and motion are identical. *Id.* Thereafter, Covington filed a response to Omega's opposition and opposition to Omega's motion. Covington Resp. Def.'s Mem. Opp. Pl.'s Mot Summ. J. & Opp. Def.'s Cross-Mot. Summ. J, ECF No. 16 ("Covington Mem. in Supp.").

of the policy, and Covington has no duty to defend or indemnify Omega as a result. Covington's motion for summary judgment will be granted, and Omega's motion for summary judgment will be denied.

## I.     BACKGROUND

The material facts are not in dispute. Covington is an insurance company with a principal place of business in Georgia. Compl. ¶ 1, ECF No. 1. Covington issued three commercial general liability policies to Omega as named insured. Plaintiff's List of Undisputed Facts ("PLUF") ¶ 1, ECF No. 12; Defendant's List of Undisputed Facts ("DLUF") ¶ 1, ECF No. 15. The last of the three policies, policy number VBA379367 00, had a policy period of August 7, 2015 to August 7, 2016 ("Policy"). *Id.*; ECF No. 1-1.[2] The Policy provides coverage for bodily injury, property injury, and advertising injury, subject to certain enumerated conditions and exclusions. PLUF ¶ 2.

In September 2020, a group of "purportedly well-known professional models" sued Omega in Fairfax County Circuit Court in a case styled *Brenda Lynn Geiger, et al. v. Omega Restaurant & Bar, LLC d/b/a Omega Bar a/k/a Omega*, Case No. 2020-14428. PLUF ¶¶ 3, 8; DLUF ¶ 2. In April 2021, the plaintiffs in the Underlying Lawsuit ("Geiger Plaintiffs") filed an Amended Complaint ("Underlying Complaint"), and the case was transferred to Virginia Beach Circuit Court and then removed to this Court. PLUF ¶¶ 6–7; DLUF ¶¶ 4–5; Underlying Compl., ECF No. 1-2; Notice of Removal, *Geiger v. Omega Restaurant & Bar, LLC*, Case No. 2:21-cv-256 (E.D. Va. May 7, 2021), ECF No. 1. The Geiger Plaintiffs allege that Omega misappropriated and used their images on Omega's website and social media accounts to promote its business. PLUF ¶ 8; *see generally*, Underlying Compl., ECF No. 1-2. The Underlying Complaint asserts claims for the

---

[2]     The parties do not address the policy period and Covington does not dispute that the claims made in the underlying lawsuit fall within the timeframe for which the Policy provides coverage.

unauthorized use of the Geiger Plaintiffs' images and likenesses for advertising purposes in violation of Va. Code § 8.01-40 (Count I); violation of the Virginia business conspiracy statute, Va. Code §§ 18.2-499 and -500 (Count II); and violations of the Lanham Act for false advertising and false association, 15 U.S.C. § 1125 (Counts III–IV). Underlying Compl. ¶¶ 110–160, ECF No. 1-2.

Omega notified Covington of the Underlying Lawsuit soon after it was filed, and Covington agreed to defend Omega in the lawsuit subject to a reservation of rights. PLUF ¶ 5; DLUF ¶ 3; ECF No. 12-2. In May 2021, Covington filed this lawsuit seeking a declaration that Covington does not have any duty to defend or indemnify Omega in the underlying action. Compl. 6, ECF No. 1.

## II.    LEGAL STANDARDS

### A. Summary Judgment

A district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

Although the initial burden on summary judgment falls on the moving party, once a movant properly files evidence supporting summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific evidence establishing the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (citation omitted). When

evaluating a summary judgment motion, "the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 199 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52). In making such a determination, "the district court must 'view the evidence in the light most favorable to the' nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).

When considering cross-motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). As to each motion, the Court must resolve factual disputes and competing rational inferences in favor of the non-movant. *Id.*

**B. Insurance Contract Interpretation**

Virginia law governs interpretation of the Policy.[3] In Virginia, a court determining insurance coverage relies on general principles of contract law. "When the language of an insurance policy is clear and unambiguous, courts must give the language its plain and ordinary meaning and enforce the policy as written." *Penn. Nat'l*, 754 F. Supp. 2d at 823 (citing *Transcon. Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313 (Va. 2001) and *Schneider v. Cont'l Cas. Co.*, 989 F.2d

---

[3]      A federal district court exercising diversity jurisdiction applies the choice of law rules of the forum state. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins.*, 566 F.3d 150, 154 (4th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Here, the forum state is Virginia, and in Virginia, "the law of the place where an insurance contract is written and delivered" applies. *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993); *Penn. Nat'l Mut. Cas. Ins. Co. v. Block Roofing Corp.*, 754 F. Supp. 2d 819, 822 (E.D. Va. 2010) ("Under Virginia law, a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured.") (citation omitted). The Policy was delivered to Omega in Virginia. Policy 4, ECF No. 1-1. Thus, Virginia law applies.

728, 733 (4th Cir. 1993)). However, any ambiguity in contract language must be construed against the insurer. *Id.* (citing *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005)). Ambiguity exists when, in context, the language is capable of more than one reasonable meaning. *Id.* (citing *Res. Bankshares Corp.*, 407 F.3d at 636).

In deciding whether coverage applies, a court may consider only the underlying complaint and the relevant policy. "[I]t is a well-established principle . . . that only the allegations in the [underlying] complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012) (collecting cases); *see also Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 102 n.12 (E.D. Va. 1989), *aff'd*, 907 F.2d 1140 (4th Cir. 1990) ("[A]n insurer's duty to defend is determined solely by the allegations in the pleadings."). "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." *AES Corp.*, 725 S.E.2d at 535 (citing *Copp v. Nationwide Mut. Ins. Co.*, 692 S.E.2d 220, 224 (Va. 2010)).

## C. The Duties to Defend and Indemnify

Virginia "recognize[s] the 'potentiality rule,' wherein 'an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy.'" *CACI*, 566 F.3d at 155 (quoting *Bohreer v. Erie Ins. Grp.*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007)); *see also Penn. Nat'l*, 754 F. Supp. 2d at 822 ("[A]n insurer's duty to defend its insured . . . depends on whether the allegations made in the complaint . . . potentially fall within the policy's coverage.") (citation omitted). "If an insurance policy is susceptible to two

5

constructions, one of which would effectuate coverage and the other would not, it is to be construed liberally in favor of the insured and strictly against the insurer." *Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 456 (E.D. Va. 2006) (citation omitted). Additionally, "[l]anguage in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) (internal quotation marks and citation omitted). Therefore, "the burden is upon the insurer to prove that an exclusion of coverage applies." *Id.* (citations omitted). The duty to defend is broader than the duty to indemnify. *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 376 (E.D. Va. 2022). Thus, "if a court finds there is no duty to defend, there is also no duty to indemnify." *Id.* (citations omitted).

### III.    ANALYSIS

As required by the "eight corners rule," the Court will consider the allegations in the Underlying Complaint and the language of the Policy to determine whether Covington has a duty to defend and/or indemnify Omega.

#### A. Policy Language

The Policy provides that Covington "will have the right and duty to defend" Omega against any suit seeking damages "because of 'personal and advertising injury' to which this insurance applies." Policy 25 ¶ 1(a), ECF No. 1-1.[4] Under the Policy, "personal and advertising injury" means "injury . . . arising out of one or more of the following offenses:"

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

---

[4]    The Policy is Exhibit 1 to Covington's Complaint. Page references to all underlying documents correspond to the ECF page numbers.

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

Policy 34 ¶ 14.

The Policy contains the following relevant exclusions:

This insurance does not apply to:

**a. Knowing Violation of Rights of Another** "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**d. Criminal Acts** "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**i. Infringement of Copyright, Patent, Trademark or Trade Secret** "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement." However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.[5]

Policy 25 ¶ 2.

## B. Policy Coverage and Exclusions

Covington asserts that the Policy does not provide coverage for the Underlying Lawsuit because (1) Count I alleges infringement of an intellectual property right, which is expressly excluded from coverage; (2) Count II alleges conspiracy, which is excluded from coverage as a

---

[5]     Hereinafter, the "Intellectual Property Exclusion."

knowing violation of the rights of another and as a criminal act; and (3) the Lanham Act claims (Counts III and IV) are not one of the enumerated offenses in the Policy's definition of "personal and advertising injury" and are excluded by the Intellectual Property Exclusion. Covington Mem. in Supp. 11–18, ECF No. 12. Omega does not respond to or dispute these arguments regarding coverage and exclusions. But Omega does contend that the Geiger Plaintiffs allege misappropriation of their advertising ideas, a covered offense under the Policy and an exception to the Intellectual Property Exclusion. Omega Mem. in Supp. 4–6, ECF No. 15. Omega also argues that the Underlying Complaint alleges a potential claim for defamation, which is covered by the Policy as an "[o]ral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Policy 34 ¶ 14(d); Omega Mem. in Supp. 6–8, ECF No. 15. The Court will consider each argument in turn.

**C. Covington's Arguments Against Coverage**

<u>1. The Policy Excludes Coverage for Infringement of an Intellectual Property Right</u>

Count I of the Underlying Complaint alleges that Omega violated Virginia Code § 8.01-40 when it misappropriated the Geiger Plaintiffs' images and published them on Omega's website and social media accounts to attract clientele and generate business. Underlying Compl. ¶ 110–124, ECF No. 1-2. Pursuant to Virginia Code § 8.01-40(A), a claim may be brought for the unauthorized use of a person's name or image where a person's "name, portrait, or picture is used" without his or her consent "for advertising purposes or for the purposes of trade." Covington acknowledges that Count I falls within the Policy definition of a "personal and advertising injury" because Count I asserts a claim arising out of the "written publication . . . of material that violates a person's right of privacy." Policy 34 ¶ 14(e); Covington Mem. in Supp. 12, ECF No. 12. However, Covington argues the Policy does not provide coverage for Count I because the claim

arises out of the infringement of an intellectual property right and is therefore excluded by the Intellectual Property Exclusion. Covington contends that since Virginia Code § 8.01-40(A) protects a person's property interest in his or her name or likeness, the Intellectual Property Exclusion bars coverage because the claim "aris[es] out of the infringement of copyright, patent, trademark, trade secret or other *intellectual property rights*." Policy 26 ¶ 2(i) (emphasis added). Covington Mem. in Supp. 11–14, ECF No. 12. Omega does not address Covington's argument, or otherwise argue that the Intellectual Property Exclusion does not apply to Count I.

It is well established that Virginia Code § 8.01-40 protects both a property interest and a right to privacy. The statute "is premised upon the concept that a person holds a property interest in his or her name and likeness." *PTS Corp. v. Buckman*, 561 S.E.2d 718, 722 (Va. 2002) (citation omitted); *see also Devil's Advoc., LLC v. Zurich Am. Ins. Co.*, No. 1:13cv1246, 2014 WL 5161197, at *8 (E.D. Va. Oct. 10, 2014) ("[I]t is well-settled that [plaintiff] has a valid proprietary right in his own name: In Virginia, one holds a property interest in one's name and likeness . . . ." (citing *Town & Country Props., Inc. v. Riggins*, 457 S.E.2d 356, 363–64 (Va. 1995) (internal quotation marks omitted))). Covington also properly notes that Virginia Code § 8.01-40 codifies one of several common law torts of invasion of privacy. *See* Covington Mem. in Supp. 12, ECF No. 12. Specifically, it "codifies the misappropriation of a plaintiff's name or likeness for commercial purposes." *Jackson v. Michalski*, No. 3:10cv52, 2011 WL 3679143, at *12 (W.D. Va. Aug. 22, 2011); *see also* Restatement (Second) of Torts § 652C (Am. L. Inst. 1977) ("One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."). Thus, Count I alleges Omega violated the Geiger Plaintiffs' property interests in their names and likenesses and their rights to privacy and therefore falls within the Policy.

The Court must determine whether the alleged violation also constitutes infringement of the Geiger Plaintiffs' *intellectual* property rights and whether the claim is excluded from coverage by the Intellectual Property Exclusion as a result. Where, as here, alleged misappropriation of a person's name or likeness is for commercial purposes, the misappropriation is commonly referred to as a violation not just of the right of privacy, but of the right of publicity. *See Rosa & Raymond Parks Inst. for Self. Dev. v. Target Corp.*, 812 F. 3d 824, 830 (11th Cir. 2016). While the right of publicity is not synonymous with the right of privacy, the concepts are related, and the right of publicity is generally understood to have evolved from the right of privacy. 1 J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* § 5:61 (2d ed. 2022) ("[T]he right of publicity is a right which, while coexisting side by side with the right of privacy, is independent of the right of privacy . . . the right of publicity was carved out of the general right of privacy."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 967 (10th Cir. 1996) ("[t]he right of publicity . . . was originally intertwined with the right of privacy, [but] courts soon came to recognize a distinction between the personal right to be left alone and the business right to control one's identity in commerce"). In determining whether a misappropriation violates the right of publicity, the inquiry is whether the defendant "received a commercial benefit from use of Plaintiff's name or likeness that, without Plaintiff's image, he would not otherwise have received." *Henley v. Dillard Dep't Stores*, 46 F. Supp. 2d 587, 597 (N.D. Tex. 1999) (citation omitted). This is what the Geiger Plaintiffs allege here—that Omega received a commercial benefit from the use of their likenesses that it would not have received otherwise. As a result, Count I alleges Omega violated the Geiger Plaintiffs' right of publicity.

It follows that Count I also alleges that Omega infringed upon the Geiger Plaintiffs' intellectual property rights. Black's Law Dictionary defines "intellectual property" as "[a] category

of intangible rights" including "trade-secret rights, *publicity rights*, moral rights, and rights against unfair competition." *Intellectual Property*, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see also RSR Art, LLC v. Bob Ross, Inc.*, 380 F. Supp. 3d 510, 515 n.1 (E.D. Va. 2019) ("The right of publicity is an intellectual property right . . . ." (quoting *ETW Corp. v. Jireh Publ'g., Inc.*, 332 F.3d 916, 928 (6th Cir. 2003))); *Mendocino Wine Grp., LLC v. QBE Americas, Inc.*, No. 15cv6342, 2016 WL 4154853, at *5 (N.D. Cal. Aug. 5, 2016) ("[I]t is well settled under California law, both statutory and common law, that, while the right of publicity is derivative from a right of privacy, it is clearly considered an intellectual property right which is specifically excluded from coverage under the [Hartford] [p]olicy." (quoting *Aroa Mktg., Inc. v. Hartford Ins. Co. of Midwest*, 130 Cal. Rptr. 3d 466, 469 (Cal. Ct. App. 2011))).[6]

Therefore, the Intellectual Property Exclusion bars coverage for Count I of the Underlying Complaint. Count I alleges violation of Virginia Code § 8.01-40 by misappropriation of the Geiger Plaintiffs' images and that these images were published on Omega's website and social media

---

[6]     The distinction between the right of privacy and the right of publicity is critical to the coverage determination here because the Policy provides coverage for violation of one (the right of privacy) but excludes coverage for infringement of the other (as an intellectual property right). Policy 34 ¶ 14(e); 25 ¶ 2(i). However, this is not an instance where the exclusion "swallow[s] the policy coverage . . . permitting the insurer to give with the right hand and then take away with the left" rendering coverage "meaningless." *Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 243 (4th Cir. 1995) (quoting *Curtis-Universal, Inc. v. Sheboygan Emergency Medical Servs., Inc.*, 43 F.3d 1119, 1123 (7th Cir.1994)). This is because the Policy provides coverage for a broader category of personal and advertising injury offenses than the Intellectual Property Exclusion excludes from coverage. *See Great Am. Ins. Co. v. Beyond Gravity Media, Inc.*, 560 F. Supp. 3d 1024, 1037–38 (S.D. Tex. 2021) (analyzing apparent contradiction in policy's grant of coverage and exclusion and concluding that personal and advertising injury coverage did not extend to infringement of trademarks or misappropriation of trade secrets because coverage and exclusion were not coextensive); *Direct Techs. Int'l, Inc. v. Maxum Indem. Co.*, 418 F. Supp. 3d 112, 120 (W.D.N.C. 2019) (coverage was not illusory where "the insuring provision for personal and advertising injury remains intact, despite application of the IP Exclusion to some discrete offenses . . . . the narrower subset of advertising injury is not swallowed up by the IP Exclusion" (internal quotation marks omitted)).

accounts for a commercial purpose. These allegations squarely allege violation of the Geiger Plaintiffs' intellectual property rights and are thus excluded from coverage under the unambiguous terms of the Intellectual Property Exclusion.

Covington has no duty to defend Omega with respect to Count I of the Underlying Complaint.

### 2. The Policy Excludes Coverage for Allegations of Statutory Business Conspiracy

The Geiger Plaintiffs' second cause of action alleges that Omega violated Virginia's business conspiracy statute, Virginia Code § 18.2-499(A). Underlying Compl. ¶¶ 125–141, ECF No. 1-2. Specifically, Count II alleges a violation of the statute related to Omega's work with "certain third-party graphic designers, independent contractors, DJs, social media consultants and/or others, named herein as DOES 1 THROUGH 5, to misappropriate Plaintiffs' images, repurpose these images, create the subject advertisements using Plaintiffs' repurposed images, and publish the subject advertisements on [Omega's] social media pages." *Id.* ¶ 126.

Covington argues the Policy does not provide coverage for Count II because the cause of action requires an underlying tort and is a criminal act. Covington Mem. in Supp. 17, ECF No. 12. As noted above, the Policy does not provide coverage for intentional tort claims generally and excludes coverage for "Knowing Violation of Rights of Another" and "Criminal Acts." Plaintiff does not address Covington's argument, or otherwise argue that the exclusions do not apply to Count II.

Virginia Code § 18.2-499(A) makes it unlawful, in part, for "[a]ny two or more persons" to "combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever." Violation of this provision is a Class 1 misdemeanor. Va. Code § 18.2-499(A).

In addition to creating a criminal offense, Virginia Code § 18.2-499 affords civil relief under Virginia Code § 18.2-500(A), which provides that a party may sue for damages when the party is "injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499." Virginia Code § 18.2-500(A). To succeed on a claim for business conspiracy, a plaintiff must prove: "(1) concerted action; (2) legal malice; and (3) causally related injury." *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007) (citations omitted). To show that the conspirators acted with legal malice, a plaintiff must show that "at least *one* of the purposes of the conspiracy" was "to injure the plaintiff's reputation, trade, or business." *Id.* at 326. (emphasis in original) (citation omitted). Importantly, a cause of action for business conspiracy requires "an unlawful act or an unlawful purpose" because "there can be no conspiracy to do an act that the law allows." *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014).

The Geiger Plaintiffs' business conspiracy claim asserts that Omega acted with the intent to injure their reputation, trade, or business. The Underlying Complaint alleges that "[t]he purpose of Omega's concerted effort was to deprive Plaintiffs of the fair market value of their professional modeling services that they would have obtained had Omega and its co-conspirators operated through legal channels, and thus secure for Omega free advertising" and that "Defendants Omega and Does 1–5 acted with legal malice because they intended to deprive each Plaintiff of the fair market value of her professional modeling services and thus secure for themselves free advertising." Underlying Compl. ¶¶ 132, 134, ECF No. 1-2.

As a threshold matter, the Policy does not provide personal and advertising injury coverage for injury arising out of the offense of conspiracy. *See* Policy 34 ¶ 14, ECF No. 12-3 (covering, for example, "[o]ral or written publication, in any manner, of material that violates a person's right of privacy" and "[t]he use of another's advertising idea in your 'advertisement'", but not

conspiracy). Further, even if coverage existed, the Policy excludes coverage for personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another" or "arising out of a criminal act committed by or at the direction of the insured." Policy 25 ¶ 2, ECF No. 1-1. Here, the Court need only determine whether one of the exclusions applies and concludes that the "Criminal Acts" exclusion bars coverage for the conspiracy claim. The Geiger Plaintiffs plainly allege violation of the business conspiracy statute. Underlying Compl. ¶¶ 125–141, ECF No. 1-2. As described above, to establish civil liability for business conspiracy, a plaintiff must meet the elements of the criminal business conspiracy statute. *Dunlap*, 754 S.E.2d at 317. While a violation of the business conspiracy statute can be premised on an unlawful *or* criminal act, *Dunlap*, 754 S.E.2d at 319, business conspiracy is itself a criminal act and civil and criminal penalties may be imposed for violation of the statute. Va. Code 18.2-499(A) (individuals who commit statutory business conspiracy "shall be jointly and severally guilty of a Class 1 misdemeanor" and "[s]uch punishment shall be in addition to any civil relief recoverable under § 18.2-500"). The Geiger Plaintiffs thus allege unlawful acts committed by or at Omega's direction. Therefore, the Criminal Acts exclusion applies, and Covington does not owe Omega a duty to defend the statutory business conspiracy claim.

3. The Policy Does Not Provide Coverage for the Lanham Act Claims

The Geiger Plaintiffs' third and fourth causes of action allege that Omega violated § 43(a) of the Lanham Act. In Count III, the Geiger Plaintiffs claim that Omega violated the false advertising provisions of the Lanham Act because Omega's advertisements made it appear that the Geiger Plaintiffs worked at or endorsed Omega, leading to consumer confusion about their employment at and/or endorsement of Omega and the goods and services provided by Omega. Underlying Compl. ¶¶ 142–151, ECF No. 1-2. In Count IV, the Geiger Plaintiffs claim that Omega

violated the false association provision of the Lanham Act because Omega's use of the Geiger Plaintiffs' images created the false impression that they were affiliated, connected, or otherwise associated with Omega. *Id.* ¶¶ 152–160, ECF No. 1-2.

To succeed on a false advertising claim in violation of the Lanham Act, a plaintiff must show:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 298–99 (4th Cir. 2017) (quoting *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015)).

The Underlying Complaint sufficiently alleges facts to support a claim for false advertising under the Lanham Act. For example, the Geiger Plaintiffs allege that Omega's advertisements, using the Geiger Plaintiffs' images, "create the false impression with potential clientele that each Plaintiff either worked as an entertainer working at [Omega], that she endorsed [Omega], or that she was otherwise associated or affiliated with [Omega]." Underlying Compl. ¶ 89, ECF No 1-2. The Geiger Plaintiffs further claim Omega's unauthorized use of their images "deprives them of income they are owed relating to the commercialization of their Images" and "substantially injures their careers." *Id.* ¶¶ 100–101. Construing any ambiguities liberally in favor of Omega, the elements are sufficiently alleged and the Underlying Complaint alleges a potential claim for false advertising.

However, false advertising must be included in the definition of "personal and advertising injury" under the Policy for coverage to apply. The Policy does not explicitly provide coverage for

false advertising, and none of the enumerated offenses can be interpreted as including false advertising. *See* Policy 34 ¶ 14, ECF No. 1-1. Based on its plain terms, there is no coverage under the Policy for false advertising claims. *See Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.*, 203 F. Supp. 2d 587, 598 (E.D. Va. 2002), *aff'd on other grounds*, 332 F.3d 215 (4th Cir. 2003) (finding policy did not provide coverage for false advertising claim under the Lanham Act where policy did not explicitly provide coverage and claim could not be read into any covered offense).

Covington additionally argues that even if the Policy included false advertising as a covered offense, the Intellectual Property Exclusion excludes coverage for "personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." Policy 26 ¶ 2(i), ECF No. 1-1 (cleaned up). But the Geiger Plaintiffs do not have to show infringement of an intellectual property right to succeed on their Lanham Act claim for false advertising. This is because a false advertising claim requires only a "false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product." *Verisign, Inc.*, 848 F.3d at 298–99. While this false statement may be a false statement related to an intellectual property right (*i.e.*, passing off a competitor's trademark as one's own), that need not be the case. Because none of the elements of the false advertising offense require proof of an intellectual property right or its infringement, the Intellectual Property Exclusion does not apply. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Expedia*, *Inc.*, No. C19-896, 2020 WL 5893326, at *4 (W.D. Wash. Oct. 5, 2020) (reaching a similar conclusion).

Covington's reliance on the United States Court of Appeals for the Fourth Circuit's opinion in *Superformance Int'l, Inc. v. Hartford Cas. Ins. Co.* is misplaced. While the Fourth Circuit found that a similar policy exclusion ("injury arising out of infringement of 'trademark, trade name,

service mark or other designation of origin or authenticity'") applied to a false advertising claim,

precluding coverage, the false advertising claim in *Superformance* was based on the use of a

trademark in advertising. 332 F.3d 215 at 223. The Fourth Circuit recognized this fact, describing

the false advertising claim as being "based on" the other allegations of "trademark infringement,

trade dress infringement, and trademark dilution." *Id.* Here, the Geiger Plaintiffs' false advertising

claim does not implicate an intellectual property right, and therefore, the exclusion does not apply.

The same analysis applies to Plaintiffs' false association claim. To establish a false

association claim under the Lanham Act, a plaintiff must prove:

> (1) Defendants used [plaintiff's] name or a word in interstate commerce in
> connection with goods and services; (2) the Defendants' use of [plaintiff's] name
> or a word was likely to cause confusion, mistake or deception as to the association
> of the Defendant with the Plaintiff, or the sponsorship, or approval of Defendant's
> good or services; and (3) Plaintiff is, or is likely to be, damaged by these acts.

*Ullah v. Linkenauger*, No. 1:20cv634, 2020 WL 9459338, at *3 (E.D. Va. Oct. 2, 2020) (citation

omitted).

The Underlying Complaint alleges that although Omega was "aware that the Plaintiffs were

neither affiliated, connected or associated with Omega nor worked at, sponsored, or approved of

Omega's goods, services or commercial activities, Defendant nevertheless used Plaintiffs[']

Images in order to mislead potential customers as to Plaintiffs[']] employment at and/or affiliation

with [Omega]."[7] Underlying Compl. ¶ 157, ECF No. 1-2. As with the false advertising claim,

Plaintiffs adequately allege a potential claim for false association, but the Policy does not provide

coverage for this claim. The Intellectual Property Exclusion does not preclude coverage for false

association in this instance because the claim does not arise out of the infringement of an

---

[7]     The Court assumes the Underlying Complaint's reference to "Utopia Cabaret" is in error
and has substituted "Omega" for "Utopia Cabaret."

intellectual property right. Nevertheless, because it is not an offense enumerated by the Policy, and cannot be read into any of those enumerated, Covington does not owe Omega a duty to defend Plaintiffs' false association claim under the Policy.

Having considered Covington's arguments against coverage, the Court now turns to Omega's arguments in favor of coverage.

### D. Omega's Arguments in Favor of Coverage

Omega argues the Underlying Complaint alleges two claims for which coverage exists: misappropriation of the Geiger Plaintiffs' advertising ideas and a potential claim for defamation. Omega Mem. in Supp. 4–8, ECF No. 15. Regarding the first argument, as discussed above, Count One of Underlying Complaint alleges misappropriation of the Geiger Plaintiffs' name or likeness. The Underlying Complaint does not expressly allege common law misappropriation of advertising ideas. Nevertheless, this potential claim may still trigger a duty to defend. Virginia recognizes the "Potentiality Rule," under which "an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy." *Penn. Nat'l Mut. Cas. Ins. Co. v. River City Roofing, LLC*, No. 3:21cv365, 2022 WL 1185888, at *3 (E.D. Va. Apr. 21, 2022) (quoting *CACI*, 566 F.3d at 155), *appeal dismissed sub nom. Penn. Nat'l Mut. Cas. Ins. Co. v. Branch Builds, Inc.*, 2022 WL 16756393 (4th Cir. July 13, 2022).

### 1. Virginia Does Not Recognize a Claim for Common Law Misappropriation

Omega contends that coverage exists because "use of another's advertising idea" is an enumerated offense and an exception to the Intellectual Property Exclusion, and the Geiger Plaintiffs "allege the use of their advertising ideas in Omega's advertisement as a basis for their claims." Omega Mem. in Supp. 4, 6, ECF No. 15. The Underlying Complaint asserts that "[Omega] misappropriated Plaintiffs' advertising ideas because the Images [Omega] misappropriated came

from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand." Underlying Compl. ¶ 33, ECF No. 1-2; *see also Id.* at 5. Covington responds that the Underlying Complaint alleges Omega used Plaintiffs' images, not their advertising ideas, and that even if the Underlying Complaint alleges facts establishing misappropriation of an advertising idea, Covington owes no duty to defend because Virginia does not recognize a claim for misappropriation of advertising ideas. Covington Opp'n 9–15, ECF No. 16.

The Policy does not define "advertising idea." Courts in other circuits have considered and defined "advertising idea" as "any idea or concept related to the promotion of a product to the public," *IVFMD Fla., Inc. v. Allied Prop. & Cas. Ins. Co.*, 679 F. App'x 769, 772–73 (11th Cir. 2017), and "misappropriation of an advertising idea" as the "wrongful taking of another's manner of advertising, the wrongful taking of an idea concerning the solicitation of business and customers, or the wrongful taking of the manner by which another advertises its goods or services," *Evanston Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110, 1119–20 (W.D. Wash. 2016) (internal quotation marks and citations omitted).

Covington argues that "because there is nothing new or novel" about Plaintiffs' "manner or method of advertising that uses images of attractive women . . . to sell goods and services," Omega did not take that "idea" from them when it used their images in its advertising. Covington Mem. in Supp. 11, ECF No. 16. Covington's position overlooks the fact that "advertising idea" does not connote a unique, new, or distinctive idea but simply an idea about advertising. *See Transp. Ins. Co. v. Freedom Elecs., Inc.*, 264 F. Supp. 2d 1214, 1218 (N.D. Ga. 2003) ("an 'advertising idea' is 'any idea or concept related to the promotion of a product to the public.'" (citing *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. 2002))). Moreover,

at least one court has found that unauthorized use of professional models' images in promotional materials constitutes use of another's advertising idea. *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, No. 4:20cv3680, 2022 WL 3356529, at *6 (S.D. Tex. Aug. 12, 2022) ("[T]he Models' pleadings in the underlying lawsuit sufficiently allege that the Clubs used Models' images (i.e., their 'advertising ideas') and placed them in their own 'advertisements.' Accordingly, the Court finds that [the insurer] had the duty to defend under the . . . policy to defend the Clubs against [plaintiff's] claims.").

Here, the Underlying Complaint details each of the Geiger Plaintiffs' backgrounds, including their professional accomplishments, notable clients and work, and social media presence. *See, e.g.*, Underlying Compl. ¶ 49, ECF No. 1-2 ("Gaxiola . . . became Miss Cuba at the age of 18 . . . [s]he is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues . . . [s]he is also the current face of UFC"). The Geiger Plaintiffs claim the images Omega misappropriated came from their social media pages, which they use to market themselves, grow their fan bases, and build and maintain their personal brands. *Id.* ¶ 33. The Geiger Plaintiffs' advertising ideas as expressed through their images on social media may or may not be novel, but their methods of portraying themselves are their "advertising ideas." The Underlying Complaint sufficiently alleges that Omega misappropriated the Geiger Plaintiffs' manner of advertising and concepts related to their promotion—their advertising ideas—when they allegedly used the Geiger Plaintiffs' images for their own purposes.

This completes only half the analysis, though, because "[t]o implicate the duty [to defend], the underlying complaint must allege some facts on which the insurer would be liable." *CACI*, 566 F.3d at 155. "[E]ven construing policies in favor of the insured, and even considering Virginia's

potentiality rule, 'if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations,' the duty to defend will not attach." *Id.* (quoting *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E. 2d 100, 102 (1990)). The Underlying Complaint states a potential claim for misappropriation of the Geiger Plaintiffs' advertising ideas, and the Policy provides coverage for a personal and advertising injury arising out of the use of another's advertising idea in an advertisement. Policy 34 ¶ 14(f), ECF No. 1-1. But Virginia does not recognize a cause of action for common law misappropriation.[8] *Superformance*, 203 F. Supp. 2d at 597–98 ("Superformance cites no Virginia or Massachusetts case for its misappropriation claim and it appears neither state has recognized such a cause of action"); *Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 724 (E.D. Va. 2017) ("The essential error in plaintiff's misappropriation argument is that Virginia has never recognized a claim for common law misappropriation. No Supreme Court of Virginia decision has adopted a claim for common law misappropriation, and it is inappropriate for a federal court to create such a claim."). Thus, while the Policy may provide coverage for such a hypothetical claim, the duty to defend is not implicated here because there exists no such claim for which Omega could be held liable.

## 2. The Underlying Complaint Does Not State a Potential Claim for Defamation by Implication

Omega asserts that Covington owes it a duty to defend the Underlying Lawsuit because the Underlying Complaint contains "factual allegations which, if true, would establish actionable defamation," a covered offense under the Policy. Omega Mem. in Supp. 8, ECF No. 15; Policy 34

---

[8]     In a tort action, such as misappropriation, "Virginia applies the *lex loci delicti*, the law of the place of the wrong." *Milton v. ITT Rsch. Institute*, 138 F.3d 519, 521 (4th Cir. 1998). Although Omega does not expressly assert that Virginia law gives rise to the potential claim of misappropriation, it similarly does not assert that the law of any other state would give rise to the potential claim.

¶ 14(d), ECF No. 1-1. Omega acknowledges that the Underlying Complaint does not assert a claim for defamation but contends that it contains allegations sufficient to state a plausible claim for defamation by inference, implication, or insinuation under Virginia law. Omega Mem. in Supp. 7, ECF No. 15. Specifically, Omega submits the Geiger Plaintiffs' allegations that Omega used their images to falsely suggest they were associated with Omega "would be highly offensive to a reasonable person" and are thus defamatory. *Id.* Covington responds that the Underlying Complaint does not set forth a potential defamation claim under Virginia law, even by implication, because "[t]here is nothing odious, infamous, or ridiculous about being an entertainer, endorser or being otherwise associated with a night club, which is a lawful establishment carrying out a lawful business." Covington Reply 18, ECF No. 16.

Virginia law recognizes a claim for defamation by inference, implication, or insinuation. *Pendleton v. Newsome*, 772 S.E. 2d 759, 763 (Va. 2015). A statement is defamatory by implication if:

> (1) the defendants made the statements alleged in the complaint, (2) the statements, even if facially true, were designed and intended by the defendants to imply [the defamatory meaning], (3) in the light of the circumstances prevailing at the time they were made, the statements conveyed that defamatory implication to those who heard or read them, and (4) the plaintiff suffered harm as a result.

*Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 591 (E.D. Va. 2020) (alterations in original), *aff'd sub nom. Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021) (citing *Pendleton*, 772 S.E. 2d at 765).

"[A]ctionable defamatory language is that which 'tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous.'" *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018)

(quoting *Schaecher v. Bouffault*, 722 S.E.2d 589, 594 (Va. 2015)). "[L]anguage that is insulting, offensive, or otherwise inappropriate . . . is not actionable." *Id.* (citation omitted). Moreover, where, as here, "a plaintiff alleges that he has been defamed not by statements of fact that are literally true but by an implication arising from them, the alleged implication must be reasonably drawn from the words actually used." *Webb v. Virginian-Pilot Media Cos., LLC*, 752 S.E.2d 808, 811 (Va. 2014).

Omega asserts that the following allegations are sufficient to state a claim for defamation by inference, implication, or insinuation:

> [E]ach Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services. Underlying Compl. ¶ 27, ECF No. 1-2.

> Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. *Id.* ¶ 28.

> [Omega posted to its website and social media accounts the plaintiffs' images] in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Omega [and] such appearance was false. *Id.* ¶ 29–30.

> [Omega's] use of their Images substantially injures their careers. *Id.* ¶ 101.

In support of its argument, Omega cites *AIX Specialty Ins. Co. v. Big Limo, Inc.*, 547 F. Supp. 3d 757 (S.D. Ohio 2021) and *AIX Specialty Ins. Co. v. Dginguerian*, No. 18-24099, 2019 WL 4573255 (S.D. Fla. Sept. 20, 2019). In each case, the court concluded that underlying allegations stated claims for defamation. In *Big Limo*, the court found the factual allegations "damaged [underlying plaintiff's] reputation by leading people to believe [plaintiff] was associated with this allegedly disreputable establishment." 547 F. Supp. at 767. Similarly, in *Dginguerian*, the court noted the allegations "impugn[ed] [underlying plaintiff's] character, embarrasse[d] her

23

and suggest[ed]—falsely—her support for and participation in the strip tease industry." No. 18-24099, 2019 WL 4573255 at *5.

Other courts have reached the opposite conclusion given similar facts. *See Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 253 (S.D.N.Y. 2019) (holding that use of models' pictures in promotional materials for a club did not amount to a defamatory statement); *Veronina v. Scores Holding Co., Inc.*, No. 16cv2477, 2017 WL 74731, at *6 (S.D.N.Y. Jan. 5, 2017) ("There is nothing defamatory in and of itself in [the] implication" that plaintiffs were employed by, endorsed, or had some affiliation with a chain of strip clubs).

Here, the Geiger Plaintiffs do not allege any fact that would give rise to a defamatory implication. The Underlying Complaint alleges Omega used the Geiger Plaintiffs' images to make it appear they "worked at, endorsed or were otherwise associated or affiliated with Omega," Underlying Compl. ¶ 29, but the Underlying Complaint does not elaborate on how such an association or affiliation would subject the Geiger Plaintiffs to "scorn, ridicule, or contempt" or render them "infamous, odious, or ridiculous." *Couric*, 910 F. 3d at 783. The Underlying Complaint states that Omega "operated . . . the Club, where [it] engaged in the business of selling alcohol and food in an atmosphere were [sic] nude and/or semi-nude women entertain the business' clientele." Underlying Compl. ¶ 85. But the Underlying Complaint does not allege how an implied association with such an atmosphere gives rise to a defamatory implication. Further, the Geiger Plaintiffs do not allege that Omega "designed and intended" the use of their images "to imply the defamatory meaning." *Fairfax*, 534 F. Supp. 3d at 591 (cleaned up). To the contrary, the Underlying Complaint alleges Omega used the Geiger Plaintiffs' images to promote and draw customers to their business—not to shame or disgrace them. The allegations in the Underlying Complaint do not state a potential claim for defamation by implication, and Covington does not

owe Omega a duty to defend on that basis.

**E. The Duty to Indemnify**

"Because the duty to defend is broader than the duty to indemnify, if there is no duty to defend, there can be no duty to indemnify." *Builders Mut. Ins. Co. v. Futura Grp., L.L.C.*, 779 F. Supp. 2d 529, 534 (citing *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004)). According to the terms of the Policy and the allegations in the Underlying Complaint, Covington has no duty to defend, and therefore, no duty to indemnify Omega in the Underlying Lawsuit.

**IV.    CONCLUSION**

Therefore, Covington's motion for summary judgment, ECF No. 11, will be granted, and Omega's motion for summary judgment, ECF No. 14, will be denied.

_____ /s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: March 30, 2023